UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

WESTERN DIVISION

| | |
|---|---|
| LEO VILLARREAL,<br><br>             Movant,<br><br>vs.<br><br>UNITED STATES OF AMERICA,<br><br>             Respondent. | CIV. 5:14-CV-5008-JLV<br><br>REPORT AND RECOMMENDATION |

**INTRODUCTION**

Movant Leo Villarreal has moved this court *pro se* to vacate, set aside, or correct his sentence pursuant to 28 U.S.C. § 2255. See Villarreal v. United States, 5:14-CV-5008-JLV Docket Nos. 1 & 2 (D.S.D.) (hereinafter "Civ."). The United States of America ("government") has moved to dismiss Mr. Villarreal's motion without holding an evidentiary hearing. This matter was referred to this magistrate judge for the holding of any necessary evidentiary hearings and for making recommended findings and dispositions pursuant to 28 U.S.C. § 636(b)(1)(B) and the October 16, 2014 standing order of the Honorable Jeffrey L. Viken, Chief United States District Judge.

**FACTS**

On August 17, 2010 a federal grand jury issued a three-count indictment against Leo Villarreal. Count I charged him with using force to engage in and attempt to engage in a sexual act with a female on March 10, 2010 in

Manderson, South Dakota in violation of 18 U.S.C. §§ 2241(a)(1), 2246(2)(A) and 1153. See United States v. Villarreal, 5:10-cr-50082-JLV, Docket No. 1 (D.S.D.) (hereinafter "CR"). Count II charged Mr. Villarreal on the same date, same location, and with the same female of knowingly engaging and attempting to engage in the intentional touching, not through the clothing, of the genitalia of the female who was under age 16 with the intent to abuse, humiliate, harass, degrade and arouse and gratify Mr. Villarreal's sexual desire, in violation of 18 U.S.C. §§ 2241(a)(1), 2246(2)(D), and 1153. Id. Count III charged Mr. Villarreal on the same date and location, of knowingly engaging and attempting to engage in a sexual act with a second female by penetrating her genital opening with this finger with the intent to abuse, humiliate, harass, degrade, arouse and gratify his own sexual desire at a time when the second female was incapable of appraising the nature of the conduct and physically incapable of declining participation in, and communicating an unwillingness to engage in the sexual act, in violation of 18 U.S.C. §§ 2242(2), 2246(2)(C), and 1153. Id.

    Mr. Villarreal was represented by the same court-appointed counsel from the inception of his case through the conclusion of his direct appeal. A jury trial took place on all three charges from June 21-23, 2011. See CR Docket No. 78 and minute entry immediately following. Before submitting the case to the jury for its determination, the district court instructed the jury as to the essential elements the government must prove beyond a reasonable doubt on Count III, which charged a violation of 18 U.S.C. § 2242(2):

> For you to find the defendant guilty of the offense of sexual abuse as charged in Count III of the indictment, the government must prove the following four essential elements beyond a reasonable doubt:
>
> ***One***, **that on or about March 10, 2010, Leo Villarreal knowingly engaged in or attempted to engage in a sexual act with [the second female];**
>
> An act is done "knowingly" if the defendant realized what he was doing and did not act through ignorance, mistake, or accident. You may consider the evidence of defendant's acts and words, along with all the evidence, in deciding whether defendant acted knowingly.
>
> \* \* \*
>
> ***Two***, **that at the time of the offense, [the second female] was incapable of appraising the nature of the conduct or was physically incapable of declining participation in or communicating unwillingness to engage in the sexual act;**
>
> ***Three***, **that Leo Villarreal is an Indian person as defined in Final Instruction No. 7; and**
>
> ***Four***, **that the offense took place at or near Manderson, South Dakota, in Indian country as defined in Final Instruction No. 8.**

See CR Docket No. 94 at pp. 10-11. Mr. Villarreal's counsel did not propose any jury instruction setting forth the essential elements of Count III. See CR Docket No. 65.

The jury returned a verdict on June 23, 2011 finding Mr. Villarreal guilty of Counts II and III of the indictment, but acquitting him of Count I. See CR Docket No. 92. Mr. Villarreal was sentenced on March 8, 2012. See CR Docket No. 129. He received a 120-month term of imprisonment on Count II and a 96-month term of imprisonment on Count III, both sentences to run concurrently. Id.

Mr. Villarreal pursued an appeal to the Eighth Circuit, raising various issues. Briefing on his appeal was completed on September 13, 2012. Oral argument was had on the appeal on October 18, 2012.

After oral argument in Mr. Villarreal's case, a panel of the Eighth Circuit issued a decision in United States v. Bruguier, 703 F.3d 393 (8th Cir. 2012) (hereinafter "Bruguier I"), on December 21, 2012.[1] Bruguier I arose out of the District of South Dakota, the same jurisdiction in which Mr. Villarreal was prosecuted. In addition, both the defendant in Bruguier I and Mr. Villarreal were represented by the Federal Public Defenders Office for the District of South Dakota, an office consisting of six trial attorneys at that time.

In Bruguier I, the court held that the word "knowingly" in 18 U.S.C. § 2242(2) modifies the phrase "engages in a sexual act." Id. at 399. The court rejected the defendant's argument that "knowingly" required the government to show that the defendant knew the victim was unable to consent or communicate her unwillingness to engage in the sexual act. Id. at 399-400. Thus, the government was only required to prove that the defendant "knowingly" engaged in a sexual act, it did not have to prove the defendant knew the victim could not consent or protest. Id.

The Eighth Circuit then issued its decision in Mr. Villarreal's case two months later on February 22, 2013. See United States v. Villarreal, 707 F.3d 942 (8th Cir. 2013). Mr. Villarreal's counsel never raised the issue on appeal of

---

[1] Bruguier I was heard by a panel consisting of Judges Murphy, Bright, and Colloton.

4

whether the district court had correctly instructed the jury as to the elements of Count III which were premised on § 2242(2). Id.

On March 4, 2013, ten days after the decision in Mr. Villarreal's case was issued, the Eighth Circuit issued a decision contrary to Bruguier I, in United States v. Rouillard, 701 F.3d 861 (8th Cir. 2013), an appeal arising out of the District of Nebraska.[2] In Rouillard, a panel of the court held that "knowingly" in § 2242(2) required proof both that the defendant knew he was engaging in a sexual act *and* that he knew the victim was incapacitated. Id. at 865.

The opinions in both Rouillard and Bruguier I were vacated on the same day Rouillard was issued—March 4, 2013. The cases were set for a rehearing by the Eighth Circuit *en banc*, with oral argument to occur on April 12, 2013. The result of that *en banc* rehearing was United States v. Bruguier, 735 F.3d 754 (8th Cir. 2013) ("Bruguier II"), decided November 5, 2013, nine months after Mr. Villarreal's appeal was decided.

In Bruguier II, the Eighth Circuit ruled that the word "knowingly" in § 2242(2) requires the government to prove (1) that the defendant knew he was engaging in a sexual act *and* (2) that the defendant knew the victim was incapacitated. Bruguier II, 735 F.3d at 774.[3] Thus, the jury instruction submitted in Mr. Villarreal's case did not include the second requirement set forth by the court in Bruguier II because the instruction did not require the government to prove that Mr. Villarreal knew his victim was incapacitated.

---

[2] Rouillard was heard by a panel consisting of Chief Judge Riley, and Judges Smith and Shepherd.
[3] Bruguier II was a 6:5 decision by the 11-member *en banc* court.

5

Following the Eighth Circuit's decision in his case, Mr. Villarreal's counsel asked for and received an extension of the time allowed for seeking rehearing, either by the panel which decided the case, or by the entire Eighth Circuit *en banc*. The Eighth Circuit granted counsel an extension until March 22, 2013 to file a request for a rehearing of Mr. Villarreal's case.

Counsel ultimately decided on March 22, 2013, not to seek rehearing, stating that there were no nonfrivolous issues that could be raised. Counsel withdrew from representing Mr. Villarreal on this same date for the same grounds, that there were no nonfrivolous issues to pursue on Mr. Villarreal's behalf. Mr. Villarreal did not himself seek rehearing before the Eighth Circuit (his counsel withdrew on the last day of the deadline, so he could not have). He also did not himself file a petition for a writ of certiorari before the Supreme Court.

Mr. Villarreal filed his motion pursuant to § 2255 in this case on February 18, 2014, (see Civ. Docket No. 1), well within the one-year statute of limitations for habeas actions. See 28 U.S.C. § 2255(f). In his motion, Mr. Villarreal raises two grounds for relief: (1) his Sixth Amendment right to effective assistance of counsel was violated because his lawyer failed to raise the Bruguier II issue before the district court and on appeal; and (2) he has discovered new evidence demonstrating his innocence. See Civ. Docket No. 1. The government resists both grounds. See Civ. Docket Nos. 11 & 12.

## DISCUSSION

**A.      Scope and Procedure Applicable to a § 2255 Petition**

Section 2255 of Title 28 of the United States Code was enacted to supersede habeas corpus practice for federal prisoners. Davis v. United States, 417 U.S. 333, 343-44 (1974). Prior to the enactment of § 2255, habeas claims had to be brought in the district where the prisoner was confined, resulting in overburdening those districts where federal correctional institutions were located and presented logistical issues because the record in the underlying criminal case was often in a distant location. United States v. Hayman, 342 U.S. 205, 212-16 (1952). The enactment of § 2255 resolved these issues by requiring that the motion be filed in the sentencing court. Id.

The scope of a § 2255 motion is seemingly broader than the scope of a habeas petition, the latter of which is typically limited to allegations of a constitutional dimension. Section 2255 allows a federal prisoner to "vacate, set aside or correct" a federal sentence on the ground that "the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack." See 28 U.S.C. § 2255. Where the allegation for relief is *not* based on a violation of a Constitutional or federal statutory right or an assertion that the court was without jurisdiction, the Supreme Court has read a "fundamentality" requirement into § 2255–relief is available for only those errors which constitute a "fundamental defect which inherently results in

7

a complete miscarriage of justice" or "an omission inconsistent with the rudimentary demands of fair procedure." Hill v. United States, 368 U.S. 424, 428 (1962); see Peguero v. United States, 526 U.S. 23, 27-30 (1999).

Generally, petitioners are precluded from asserting claims pursuant to § 2255 that they failed to raise on direct appeal. United States v. Frady, 456 U.S. 152, 167-68 (1982); McNeal v. United States, 249 F.3d 747, 749 (8th Cir. 2001). When a § 2255 petitioner asserts a claim that is procedurally defaulted because it was not raised on direct appeal, the claim can only proceed after the petitioner has shown either: (1) actual innocence or (2) that the procedural default should be excused because there was both cause for the default and actual prejudice to the petitioner. Bousley v. United States, 523 U.S. 614, 621-22 (1998); McNeal, 249 F.3d at 749. Therefore, barring a claim of actual innocence, a petitioner must show both cause for why he failed to raise an issue on direct appeal as well as actual prejudice caused by the alleged errors.

Appellate courts generally refuse to review claims of ineffective assistance of counsel on direct appeal; such claims are, therefore, properly addressed in a 28 U.S.C. § 2255 motion such as the one here. See United States v. Lee, 374 F.3d 637, 654 (8th Cir. 2004) (ineffective assistance of counsel claims are not generally cognizable on direct appeal and will be heard only to prevent a miscarriage of justice or in cases where the district court has developed a record on the issue). Therefore, no procedural default analysis is required before examining petitioner's claims of constitutionally-deficient counsel.

## B. Ineffective Assistance of Counsel Claim

The Sixth Amendment of the Constitution of the United States affords a criminal defendant with the right to assistance of counsel. U.S. CONST. AMEND. VI. The Supreme Court "has recognized that 'the right to counsel is the right to effective assistance of counsel.'" Strickland v. Washington, 466 U.S. 668, 698 (1984) (citing McMann v. Richardson, 397 U.S. 759, 771, n.14 (1970)). Strickland is the benchmark case for determining if counsel's assistance was so defective as to violate a criminal defendant's Sixth Amendment rights and require reversal of a conviction. Id. at 687. "When a convicted defendant complains of the ineffectiveness of counsel's assistance, the defendant must show that counsel's representation fell below an objective standard of reasonableness." Id. at 687-688. The defendant must also show that counsel's unreasonable errors or deficiencies prejudiced the defense and affected the judgment. Id. at 691. The defendant must show, "there is a reasonable probability that, absent the errors, the factfinder would have had a reasonable doubt respecting guilt." Id. at 695. In sum, a defendant must satisfy the following two-prong test. Id. at 687.

> First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable. Unless a defendant makes both showings, it cannot be said that the conviction or death sentence resulted from a breakdown in the adversary process that renders the result unreliable.

9

Id.

"There is a presumption that any challenged action was sound trial strategy and that counsel rendered adequate assistance and made all significant decisions in the exercise of professional judgment." Hall v. Luebbers, 296 F.3d 685, 692 (8th Cir. 2002). It is the petitioner's burden to overcome this presumption, and a "petitioner cannot build a showing of prejudice on a series of errors, none of which would by itself meet the prejudice test." Id.

### 1. Whether Counsel's Performance Was Deficient

Counsel's conduct must be judged by the standards for legal representation which existed at the time of the representation, not by standards promulgated after the representation. Bobby v. Van Hook, 558 U.S. 4, 6-9 (2009) (*per curiam*). American Bar Association standards and similar directives to lawyers are only guides as to what reasonableness of counsel's conduct is, they are not its definitive definition. Id. Judicial scrutiny of attorney performance is highly deferential, with a strong presumption that counsel's conduct falls within the range of reasonable professional conduct. Strickland, 466 U.S. at 698.

"The Sixth Amendment does not require that counsel raise every colorable or non-frivolous claim on appeal." New v. United States, 652 F.3d 949, 953 (8th Cir. 2011) (citing Roe v. Delo, 160 F.3d 416, 418 (8th Cir. 1998)). A lawyer's "failure to raise arguments that require the resolution of unsettled legal questions *generally* does not render a lawyer's services 'outside the wide

range of professionally competent assistance' sufficient to satisfy the Sixth Amendment." New, 652 F.3d at 952 (emphasis added). Nor is it normally ineffective for a lawyer to fail to anticipate changes in the law. Id. (discussing Fields v. United States, 201 F.3d 1025 (8th Cir. 2000)). " '[A]bsent contrary evidence, we assume that appellate counsel's failure to raise a claim was an exercise of sound appellate strategy.' " Id. at 953 (quoting United States v. Brown, 528 F.3d 1030, 1033 (8th Cir. 2008)).

The government in this matter urges the court to find that Mr. Villarreal's counsel's performance was not deficient based upon the above-stated general precepts. But the court finds that this case does not fit easily within those general precepts. The New court specifically stated that—*absent contrary evidence*—a presumption applies that a decision not to raise an argument was sound strategy. New, 652 F.3d at 953. And the court said *generally* failure to raise an unsettled legal question is not ineffective. Id. at 952. Here, there *is* contrary evidence which may suggest the application of something other than the general rule.

First, the court observes that the normal procedure in this district when a federal prisoner raises an ineffective assistance of counsel claim in a § 2255 motion is for the government to seek an affidavit of the prisoner's former counsel to address the claims of ineffectiveness. See, e.g. American Horse v. United States, 5:14-cv-5094-JLV, Docket No. 10 (D.S.D. Feb. 13, 2015); Picardi v. United States, 5:15-cv-5050-JLV, Docket No. 3 (D.S.D. July 15, 2015); Jones v. United States, 5:13-cv-5008-JLV, Docket No. 12 (D.S.D. Mar. 29, 2013). The

11

government is not required to obtain an affidavit from former defense counsel, but the court notes that it almost always does. The government did not do so in this case. Because the government did not ask for an affidavit from Mr. Villarreal's former counsel, the court does not have the benefit of counsel's explanation as to why he failed to raise the Bruguier II issue.

Second, the court notes that the lawyer who first raised the issue in Bruguier I was certainly creative and thinking outside the box. The failure of that lawyer, or any other, to raise the Bruguier issue *prior to* the Bruguier case itself could not be faulted. The court notes that the jury instructions for § 2242(2) cases prior to Bruguier, at least in this district, appeared to have solidity and long acceptance by bench and bar alike.

However, Mr. Villarreal's counsel was not acting in a vacuum, nor was he acting in a time frame long before Bruguier. Instead, his case was on appeal at the same time as the Bruguier case and the attorney for Bruguier was one of only a small handful of lawyers in the Federal Public Defender's Office where Mr. Villarreal's lawyer also practiced. The inference that these lawyers might know of significant issues and developments in each others' cases is likely.

Yet, the first opinion in Bruguier, Bruguier I, was decided against the defendant and, also, against Mr. Villarreal. But that is still not the end of the story. While Mr. Villarreal's case was still pending before the Eighth Circuit, and prior to the time the opportunity to ask for rehearing on his case had expired, a decision favorable to Mr. Villarreal—the Rouillard decision—was issued. At the time that Rouillard was decided, vacated, and set for rehearing

*en banc* along with Bruguier I, Mr. Villareal's counsel still had 18 days left to petition the Eighth Circuit for rehearing in his case. Even barring that, he could have petitioned the Supreme Court for a writ of certiorari. He did not do so, telling the Eighth Circuit he believed there were no nonfrivolous issues he could raise on behalf of Mr. Villarreal.

Normally, when a new rule of criminal law is announced, it applies to all pending criminal cases in which the convictions have not yet become final. Teague v. Lane, 489 U.S. 288, 295 (1989).[4] "Final" means any case where the judgment of conviction has been rendered, there is no further availability of appeal, and the time for petitioning the Supreme Court for a writ of certiorari has elapsed. Id. Thus, at the time the Eighth Circuit announced its decision in Rouillard, the conviction in Mr. Villarreal's case was not yet "final" because he still had appeal options available to him as well as the ability to petition for certiorari. Hence, the new rule would have been applicable to him had counsel have asked that it be applied to him.

It would not have required Mr. Villarreal's counsel to venture into a novel area of law never before decided in order to raise the issue that was raised in Bruguier on Mr. Villarreal's behalf. He could have done so at a time when there was significant evidence before him that the Eighth Circuit might look favorably on such an argument. The court cannot conclude as a matter of law that counsel's conduct in this matter was not below the standard of care given

---

[4] The Teague decision was superseded by the passage of the Antiterrorism and Effective Death Penalty Act (AEDPA), an act which concerns habeas practice. The Teague rule as to when, generally, new decisions are to be applied to other cases the convictions in which are not yet final was unaffected by AEDPA.

13

the very specific and unique facts of this case. The court therefore recommends denial of the government's motion to dismiss Mr. Villarreal's motion on the grounds that his counsel's conduct was not deficient. A factual issue exists that requires further amplification before a conclusion may be reached.

## 2. Prejudice

The other half of the Strickland analysis is whether Mr. Villarreal can demonstrate prejudice. The government seems to believe the only prejudice to Mr. Villarreal is how long he must stay in prison. Thus, the government reasons that because Mr. Villarreal must still serve his 10-year sentence on the conviction on Count II, the vitiation of the conviction on Count III does not help him.

The government cites no legal authority for this proposition, however. "A challenge to a criminal conviction is not moot merely because the sentence imposed on that conviction runs concurrently with a longer sentence whose validity is not challenged." United States v. Kimberlin, 675 F.2d 866, 867 (7th Cir. 1982). The government's position is called "the concurrent sentence rule." Sanders v. United States, 541 F.2d 190, 193 (8th Cir. 1976) (discussing Benton v. Maryland, 395 U.S. 784, 787-93 (1969)). The rule, where it is applied, holds that "a reviewing court need not pass upon the validity of the defendant's conviction on another count or on other counts if a ruling in his favor would not reduce the time that he is required to serve under the sentence imposed with respect to the valid conviction." Id. But the rule is not applied in every

14

case; its application is committed to the court's judicial discretion. Id. The rule is not applied where to do so "would be substantially prejudicial" or "expose [the defendant] to a substantial risk of adverse collateral consequences that might flow from an invalid but unreversed conviction." Id. See also United States v. Smith, 601 F.2d 972, 973-74 (8th Cir. 1979).

The factors a court considers in determining whether to apply the concurrent sentence rule are:

> Whether it was likely that evidence relevant to counts on which the defendant was improperly convicted affected the finding of guilt on another count or on other counts, and whether the fact that the defendant was convicted on plural counts affected the length of his sentence or the thinking of the sentencing judge on the question of whether or not the defendants should be placed on probation. The court should also consider whether an unreversed invalid conviction might be used as a "prior conviction" should the defendant be charged later under a recidivist criminal statute, and whether the plural but concurrent sentences are adversely affecting or are likely to affect adversely such things as the place or conditions of the defendant's confinement.

Id. at 194. The strongest case for the application of the concurrent sentence rule is where the challenge is made to the sentence, rather than to the underlying conviction. Kimberlin, 675 F.2d at 867. Of course, here, Mr. Villarreal is challenging the underlying conviction, not the sentence.

Here, because the government does not even cite the above law pertaining to the concurrent sentence rule, none of the above factors are discussed by the government. It seems axiomatic that two felony convictions are more prejudicial than one. "[T]he obvious fact of life [is] that most criminal convictions do in fact entail adverse collateral consequences." Benton, 395 U.S. at 790. For example, if Mr. Villarreal is charged in the future with another

15

crime, he may face enhanced penalties for having two felony convictions instead of one, "even if the convictions actually constituted only separate counts in a single indictment tried on the same day." Benton, 395 U.S. at 790. See also Kimberlin, 675 F.2d at 867. The conviction may be used to impeach Mr. Villarreal's character in some future judicial proceeding. Benton, 395 U.S. at 791. In addition, the Bureau of Prisons may classify Mr. Villarreal differently for privileges, housing, and release eligibility depending on the number and type of convictions he has. The government has not enlightened the court as to what the Bureau of Prisons' regulations are touching on these subjects. The court is reluctant to conclude as a matter of law, with no legal authority cited by the government, that Mr. Villarreal's conviction on Count III does not prejudice him simply because the length of his sentence is unaffected. Accordingly, the court recommends the government's motion to dismiss Mr. Villarreal's ineffective assistance of counsel claim be denied. The court finds there are factual issues as to both the performance and prejudice prongs of the Strickland test that should be subject to an evidentiary hearing.

**C.     Newly Discovered Evidence**

When a § 2255 petitioner asserts a claim that is procedurally defaulted because it was not raised on direct appeal, the claim can only proceed after the petitioner has shown either: (1) actual innocence or (2) that the procedural default should be excused because there was both cause for the default and actual prejudice to the petitioner. Bousley, 523 U.S. at 621-22; McNeal, 249 F.3d at 749. Here, Mr. Villarreal did not raise the issue of the witnesses'

16

alleged recantation on appeal, so that issue is procedurally defaulted. He does allege actual innocence as an excuse for his default.

Actual innocence means factual innocence, it does not mean mere legal insufficiency. Bousley, 523 U.S. at 623. Actual innocence claims are rarely successful as they require the petitioner to carry an exacting burden. Schlup v. Delo, 513 U.S. 298, 324 (1995). In order to show actual innocence, Mr. Villarreal must (1) produce "new reliable evidence" not presented previously; and (2) he must "show that, in light of all the evidence, it is more likely than not that no reasonable juror would have found him guilty beyond a reasonable doubt of the crime for which he . . . was convicted." Schlup, 513 U.S. at 324; United States v. Apker, 174 F.3d 934, 938-39 (8th Cir. 1999).

Evidence is "new" only if it was not available at the time of the trial and if it could not have been discovered earlier through the exercise of due diligence. Johnson v. Norris, 170 F.3d 816, 818 (8th Cir. 1999). A petitioner can make the new evidence showing only where he demonstrates that the factual basis for the evidence did not exist at the time of the trial and could not have been presented earlier. Id. A petitioner "can make the required 'new evidence' showing where, for example, the factual basis for the evidence he relies on did not exist at the time of trial and could not have been presented earlier . . . or where it is shown that a witness would not have testified at trial the same way that []he did at the evidentiary hearing had []he been asked the right questions..." United States v. Loudner, 203 F. Supp. 2d 1083, 1097 (D.S.D.

17

2002) (citations omitted). The evidence must not only be "new" but it must also be "reliable." Schlup, 513 U.S. at 324.

In his petition, this is all Mr. Villarreal says about his new evidence:

> MOVANT has been given New Evidence that has come available to him on 1-15-2014. This evidence was not available before this time to him or his counsel or the government or others. This evidence is substantial and if it would have been avialable [sic] at trial would have resulted in acquittal of all charges. This evidence shows purjured [sic] testimony.

See Civ. Docket No. 1 at p. 8.

In his memorandum of law, Mr. Villarreal elaborates on this new evidence. He states that he has been in contact with family members of the victims' families. These family members have told Mr. Villarreal that the victims have said that Mr. Villarreal did not sexually abuse or assault them in any way. See Civ. Docket No. 2 at p. 4. Mr. Villarreal states that the family members are willing to testify to this. Id. at p. 4.

Mr. Villarreal, tellingly, does not represent that the victims themselves are offering to testify to these things. In addition, Mr. Villarreal has not identified these "family members" by name nor has he filed with the court any affidavits from these persons attesting under oath to what they would say if called as witnesses in court. Finally, the court notes that Mr. Villarreal's assertions amount to double hearsay: he is repeating what another witness told him that another witness (the victim) said to them.

Here, the government is correct, Mr. Villarreal has failed to meet the demanding showing required for a § 2255 movant who alleges actual innocence on the basis of newly discovered evidence. There is nothing about the showing

18

made by Mr. Villarreal from which the court can conclude (1) that this evidence could not have been discovered before, (2) that it is reliable, and (3) that it would have changed the outcome of the verdict had the jury been presented with it.  Accordingly, the court recommends granting the government's motion to dismiss ground two of Mr. Villarreal's § 2255 motion.

## CONCLUSION

This magistrate judge respectfully recommends granting in part and denying in part the government's motion to dismiss [Docket No. 11] as follows:

1.  the motion to dismiss Mr. Villarreal's ineffective assistance of counsel claim should be denied and an evidentiary hearing should be held on this claim.  Should the district court agree, this court will appoint counsel to represent Mr. Villarreal at the hearing.

2.  the motion to dismiss Mr. Villarreal's claim of actual innocence should be granted and that ground should be dismissed without holding an evidentiary hearing.

## NOTICE TO PARTIES

The parties have fourteen (14) days after service of this Report and Recommendation to file written objections pursuant to 28 U.S.C. § 636(b)(1), unless an extension of time for good cause is obtained.  Failure to file timely objections will result in the waiver of the right to appeal questions of fact.  Objections must be timely and specific in order to require de novo review by the

District Court. <u>Thompson v. Nix</u>, 897 F.2d 356 (8th Cir. 1990); <u>Nash v. Black</u>, 781 F.2d 665 (8th Cir. 1986).

Dated this 21st day of August, 2015.

BY THE COURT:

*/s/ Veronica L. Duffy*

VERONICA L. DUFFY
United States Magistrate Judge